# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHENXING ZENG,

       Petitioner,

v.                                                                               CV 07-0682 JB/WPL

BRICK TRIPP, WARDEN,

       Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

       Petitioner Shenxing Zeng is a Chinese citizen who entered the United States without inspection and has been ordered removed. He is being detained by the Bureau of Immigration and Customs Enforcement (ICE) in El Paso, Texas. Zeng has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that his continued detention is unlawful because there is not a significant likelihood that he will be removed in the reasonably foreseeable future.

       The matter is before me now on the petition, a motion to dismiss filed by the Government, a motion seeking discovery filed by Zeng, and related briefing and exhibits.

### FACTUAL AND PROCEDURAL BACKGROUND

       Zeng was served with an order to show cause why he should not be deported on July 24, 1996, the day he entered the country. (Doc. 10 Ex. 3.) He conceded deportability and sought asylum and withholding of deportation. (*Id.*) In July 1997, an immigration judge (IJ) denied his requests for asylum and withholding of deportation, finding that his claims of persecution were not credible. (*Id.*) In lieu of an order of deportation, the IJ granted Zeng the opportunity to depart voluntarily by November 17, 1997. If he failed to depart by that date, the IJ ordered that he be deported to China.

(*Id.*)

Zeng appealed the denial of his applications for asylum and withholding of deportation to the Board of Immigration Appeals (BIA). In November 2001, the BIA dismissed the appeal. (*Id.* Ex. 2.) As a "FURTHER ORDER" and in accordance with the IJ's disposition, the BIA stated that Zeng would be permitted to depart voluntarily within thirty days. If he failed to depart within that time, he would be deported as provided in the IJ's order. (*Id.*)

In January 2007, ICE arrested Zeng and incarcerated him at the Regional Correctional Center in Albuquerque, New Mexico. (Doc. 1 at 1-3; Doc. 5 at 1.) On February 1, 2007, he requested that the BIA reissue its November 2001 decision so he could petition the Second Circuit Court of Appeals to review the decision. (Doc. 5 Ex. 2.) The BIA determined that it had not properly served the decision on Zeng. To correct this error, the BIA reissued the decision, making March 21, 2007 the decision's new effective date. (*Id.*) Again, as a "FURTHER ORDER," the BIA granted Zeng thirty days to depart voluntarily "under the terms of the Board's prior order . . . ." (*Id.*)

On April 16-17, 2007, Zeng filed in the Second Circuit Court of Appeals a petition for review of the BIA's decision and a motion to stay both removal and the voluntary departure order. (*Id.* Ex. 3-4.) On July 17, 2007, he filed his habeas petition in this Court. (Doc. 1.) Sometime thereafter, Zeng was transferred to the El Paso Processing Center in El Paso, Texas. (Doc. 9 Ex. 4.)[1]

---

[1] Because it is undisputed that Zeng was incarcerated in New Mexico when he filed his petition, his transfer out of this state does not necessarily affect the subject matter jurisdiction of this Court. *See Ex parte Endo*, 323 U.S. 283, 304-07 (1944); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("*Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Padilla*, 542 U.S. at 451-52 (Kennedy, J., concurring) (opining that the question of the proper location for a habeas proceeding is a question of personal jurisdiction or venue, rather than subject matter jurisdiction, and is therefore subject to waiver); *Hickam v. Janecka*, No. CV 06-1132 JB/RLP (D.N.M. May 7, 2007)

**LEGAL UNDERPINNINGS OF ZENG'S CLAIM**

The Government is generally required to remove an alien within ninety days after he has been ordered to be removed. 8 U.S.C. § 1231(a)(1)(A).[2] This ninety-day period is known as the "removal period." *Id.* The Attorney General must detain the alien during the removal period. *Id.* § 1231(a)(2). After the expiration of the ninety-day removal period, an alien may be detained or may be released under supervision. *Id.* § 1231(a)(6).[3] Although the statute does not explicitly limit the length of time that an alien may be detained after the removal period, the Supreme Court has concluded that indefinite detention of removable aliens would raise serious constitutional concerns. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). The Court therefore construed the statute to authorize detention "only for a period *reasonably necessary* to secure the alien's removal." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute." *Id.* at 699. The Court held that six months is a presumptively reasonable period of detention. *Id.* at 701.

---

(discussing *Padilla*). Although neither party has suggested that this Court should not rule on Zeng's petition because he was transferred, Zeng has not moved to add anyone in New Mexico who has the authority to release him as a respondent. Because I will recommend that the petition be dismissed as unripe, I find it unnecessary to determine if there is a proper respondent within this Court's jurisdiction.

[2] Both parties assume that § 1231 applies to this case even though Zeng's deportation proceedings were pending on the statute's effective date. *See Sierra v. Romaine*, 347 F.3d 559, 564 (3d Cir. 2003) (discussing the effective date of the act that included § 1231), *vacated on other grounds*, 543 U.S. 1087 (2005). Therefore, I will make the same assumption. *See Sierra v. Immigration & Naturalization Serv.*, 258 F.3d 1213, 1216 n.2 (10th Cir. 2001) (assuming that a related statute applied to a case because the parties agreed that it did); *see also Sierra v. Romaine*, 347 F.3d at 568 (stating that the Government has taken the position that § 1231 applies in cases with procedural postures like this one).

[3] This subsection only applies to certain categories of aliens. Both parties assume that the subsection applies here , without explaining which of the categories includes Zeng. I will assume that he fits within the category of aliens "ordered removed who [are] inadmissible under section 1182." 8 U.S.C. § 1231(a)(6); *see also* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*; *see also Clark v. Martinez*, 543 U.S. 371, 378 (2005) (making clear that *Zadvydas* applies to inadmissible aliens).

Zeng argues that there is no significant likelihood of his removal in the reasonably foreseeable future. Therefore, he believes that he is entitled to be released.

### THE GOVERNMENT'S MOTION TO DISMISS

In its motion to dismiss, the Government argues that Zeng's petition is not ripe because the six-month presumptively reasonable period of detention has not expired. According to the Government, the ninety-day removal period will not even begin until Zeng's appeal to the Second Circuit is resolved.[4]

#### *Commencement of the Removal Period*

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Subsection (iii) clearly does not apply here because there is no indication that Zeng has ever

---

[4] The Government does not argue that Zeng failed to exhaust administrative remedies. Therefore, I express no opinion as to whether administrative remedies were available to Zeng. *See Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004); *Arango Marquez v. Immigration & Naturalization Serv.*, 346 F.3d 892, 896-97 (9th Cir.2003).

been detained other than under an immigration process. Subsection (ii) also does not apply according to its literal terms. Zeng has filed a petition for judicial review of the removal order and has moved for a stay, but there is no indication that the Second Circuit has ordered a stay.[5]

Whether subsection (i) applies depends on the definition of the term "administratively final." Respondent seems to take the position that Zeng's order of removal will not be administratively final until the Second Circuit rules on his petition for review. In some contexts, an administrative order might not be considered final until judicial appeals have run their course. In this statute, however, the word "final" is modified by the word "administratively," suggesting that it refers to the conclusion of the administrative process, not the judicial process. This interpretation makes sense when subsection (ii) is considered. That subsection indicates that the pendency of judicial review does not affect the commencement of the removal period unless a stay is ordered. If a removal order did not become administratively final until the conclusion of judicial review, subsection (ii) would be redundant. *See Roble v. Pontesso*, 90 F. App'x 334, 336 & n.3 (10th Cir. 2004) (unpublished) (holding that removal order became administratively final on date BIA affirmed IJ's ruling and that request for judicial review did not extend commencement of the removal period because the district court did not enter a stay); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

I conclude that the removal period commenced on the day Zeng's order of removal became administratively final under 8 U.S.C. § 1231(a)(1)(B)(i). To determine when Zeng's order of removal became administratively final, I must consult another statute and a regulation.

The statute provides that an order of removal becomes final upon the earlier of "a determination by the Board of Immigration Appeals affirming such order," or "the expiration of the

---

[5] A recent check of the Second Circuit's online docket reveals that no stay order has been entered.

period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B); *see also Thapa v. Gonzales*, 460 F.3d 323, 333 n.3 (2d Cir. 2006) (explaining that the statute's reference to orders of deportation encompasses orders of removal). Under this statute, Zeng's order of removal became final when the BIA issued its decision, or March 21, 2007.

The regulation provides that an IJ's order of removal may become final at six different points: (a) upon dismissal of an appeal by the BIA; (b) upon the alien's wavier of appeal; (c) upon expiration of the time to file an appeal if the alien does not file an appeal; (d) if the order is certified to the BIA or the Attorney General, upon the date of the subsequent decision ordering removal; (e) if an IJ orders the alien removed in the alien's absence, immediately upon entry of the order; or (f) if the IJ issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period or, if the alien files a timely appeal with the BIA, upon an order of removal by the BIA or the Attorney General or upon overstay of any voluntary departure period granted or reinstated by the BIA or the Attorney General. 8 C.F.R. § 1241.1.

There is no indication in this case that the events described in items (d) or (e) have occurred. Because Zeng filed an appeal to the BIA, items (b) and (c) do not apply. The BIA dismissed Zeng's appeal, but also granted him thirty days to depart voluntarily. Thus, it appears that Zeng's order of removal became administratively final under item (f) thirty-one days after the BIA issued its decision, or April 21, 2007.

The Second and Third Circuits have held that 8 C.F.R. § 1241.1(f) is "'inconsistent with the statutory definition of a final order of removal if applied to determine finality for purposes of judicial review,' because, under 8 U.S.C. § 1101(a)(47)(B), 'the statutory definition of an order of removal

encompasses not only orders actually ordering removal but also orders in which an IJ merely determines that an alien *is* removable and issues a contingent order of removal.'" *Thapa*, 460 F.3d at 334 (quoting *Obale v. Attorney General*, 453 F.3d 151, 160 (3d Cir. 2006)).  These courts also held that the regulation conflicts with Congressional intent when applied to judicial review of removal orders because a removal order would never be subject to judicial review if the alien complied with the voluntary departure order.  *Thapa*, 460 F.3d at 334; *Obale*, 453 F.3d at 160 n.9.

Zeng urges me to follow *Thapa* and *Obale* and to determine that his order of removal became administratively final on March 21, 2007, under 8 U.S.C. § 1101(a)(47), rather than on April 21, 2007, under 8 C.F.R. § 1241.1(f).  *Thapa* and *Obale* do not apply here because this is not a proceeding for judicial review of a removal order.  Instead, it is solely a proceeding to determine the legality of Zeng's detention.  That determination depends on when the removal period started running.  During the removal period, the Government should be actively trying to remove an alien. *See* 8 U.S.C. § 1231(a)(1)(A) (providing that "the Attorney General shall remove the alien" during the removal period).  When an alien has been allowed a period of time to depart voluntarily, it would be inappropriate for the Government to attempt to remove him.  *See Thapa*, 460 F.3d at 327-28 (explaining that aliens may not be granted the opportunity to depart voluntarily unless they have both the means and the intention to depart the United States within the time specified).  Therefore, the removal period should not start until an alien has overstayed the period for voluntary departure. *Obale* supports this conclusion.  *See*  453 F.3d at 160 n.9 (suggesting that 8 C.F.R. § 1241.1(f) "may have been intended solely to specify when an order of removal may be executed, as opposed to when an order of removal is final for purposes of review").  Accordingly, I conclude that Zeng's removal period began on April 21, 2007–the date he overstayed his period of voluntary departure.

7

### *Tolling of the Removal Period*

The Government argues that the running of the removal period should be tolled because Zeng requested a stay from the Second Circuit Court of Appeals. Although there are judicial decisions that support this view, I disagree with those decisions. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002) (per curiam); *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1364 & n.4 (N.D. Ga. 2002).

In *Akinwale*, the petitioner was taken into custody on November 17, 1999, after his removal order became final. 287 F.3d at 1051-52 & n.4. On December 3, 1999, he moved for a stay of removal, which was granted on January 10, 2000. *Id.* at 1052 n.4. He filed a habeas petition on March 21, 2000. *Id.* The court stated that "Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months." *Id.* It thus appears that the Eleventh Circuit tolled the running of the removal period when Akinwale filed his motion for a stay. The court cited 8 U.S.C. § 1231(a)(1)(C), which provides for an extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."

Relying on *Akinwale*, the Northern District of Georgia has held that the mere filing of a petition for judicial review tolls the running of the removal period. *See Fahim*, 227 F. Supp. 2d at 1364 & n.4. As in *Akinwale*, the court cited 8 U.S.C. § 1231(a)(1)(C) and suggested that an alien "acts to prevent" his removal within the meaning of that statute by filing a petition for review. *Id.*

These decisions are inconsistent with 8 U.S.C. § 1231(a)(1)(B)(ii), which provides that judicial review of a removal order does not delay the running of the removal period unless a court

8

issues a stay of removal. *See Martinez v. Gonzales*, ___ F. Supp. 2d ___, ___, 2007 WL 2402737, at \*9 (C.D. Cal Aug. 17, 2007). Moreover, the language of 8 U.S.C. § 1231(a)(1)(C) suggests that it applies only to acts of bad faith or dishonesty, not to the exercise of legal rights. *See id.* at \*8; *Rajigah v. Conway*, 268 F. Supp. 2d 159, 165-66 (E.D.N.Y. 2003); *Arevalo v. Ashcroft*, 260 F. Supp. 2d 347, 349-50 (D. Mass. 2003), *dism'd as moot*, 386 F.3d 19 (1st Cir. 2004); *see also Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("[A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take."). Therefore, I conclude that a motion for a stay of removal does not ordinarily toll the running of the removal period.

In a previous order, I noted that in a Pennsylvania case, the Government claimed that the Second Circuit and the United States Attorney's Office have established an informal procedure under which an alien who moves for a stay will not be removed pending the Second Circuit's ruling on the motion. *See Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 750 (M.D. Pa. 2004). As described in *Oyedeji*, when an alien files a petition for review and a motion for a stay of removal, the Second Circuit contacts the United States Attorney's Office to obtain an agreement that the alien will not be removed until the court renders a decision on the motion for a stay. The Government represented to the court in *Oyedeji* that the Second Circuit, the United States Attorney's Office, and ICE view such an agreement as a binding stay of removal. *Id.* I noted in my previous order that no claim of such an agreement has been made in this case. (Doc. 8 at 7 n.5.) Furthermore, the district court in *Oyedeji* rejected the argument that this procedure suspended the running of the removal period. 332

9

F. Supp. 2d at 751; *see also* 8 U.S.C. § 1252(b)(3)(B) ("Service of the petition [for judicial review] . . . does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise."); *Codina v. Chertoff*, Civ. No. 06-4048, 2007 WL 1582670, at *3 (D. Minn. May 30, 2007) (describing case in which Second Circuit granted a stay of removal, thus indicating that the *Oyedeji* procedure is not always followed).

The Government now claims that such an agreement exists in this case and that it has not attempted to remove Zeng because of the agreement. However, the Government does not provide any evidence to support these claims. *See United States v. Aguirre*, No. 07-2076, 2007 WL 2372383, at *1 (10th Cir. Aug. 21, 2007) (unpublished) (holding that district court erred by relying on unverified representations in a response to a motion where counsel had no first-hand knowledge of the facts).[6]

In response to my previous order, the Government asserts that it failed to allege the existence of the agreement because "Counsel . . . was unaware that such a procedure might be in place . . . ." (Doc. 14 at 2.) It alleges the agreement now, "after having spoke [sic] with DHS counsel that such a procedure is in place." (*Id.*) The Government then states, "DHS Counsel, Agnes Pierre-Antoine, advised Counsel for the United States: 'I've heard that in the Second Circuit ICE abides by an informal 'Gentlemen's Agreement' not to remove aliens who are challenging their removal orders; this informal understanding may explain why there's no formal motion to stay removal.'" (*Id.* at 4.) This statement is hearsay within hearsay. Moreover, although the Government cites an e-mail dated September 6, 2007, as the source of the statement, the Government has not supplied a copy of the

---

[6] The previous order required the parties to provide additional briefing related to the motion to dismiss and expressly instructed that "the parties shall support their briefs' assertions of fact with affidavits or documentary evidence." (Doc. 8 at 9-10.)

10

e-mail. The statement is also contrary to the known facts of this case. Zeng has indeed filed a formal motion to stay removal. Furthermore, the Government's motion to dismiss indicates that it has not refrained from removing Zeng because of an agreement with the Second Circuit. The Government averred in that motion that it had solicited travel documents for Zeng and that it sent a Chinese identification form to the consulate on May 8, 2007. (Doc. 5 at 4.) There being no evidence that the Government has been abiding by an agreement with the Second Circuit not to remove Zeng, I need not decide whether the existence of such an agreement would toll the running of the removal period.

### *Ripeness*

Because the removal period has not been tolled, the presumptively reasonable period of detention will expire on or about October 21, 2007, or six months after April 21, 2007.[7] The Government argues that because the six-month period has not expired, Zeng's claim is not ripe. Zeng argues that the six-month period is only presumptively reasonable and that he has rebutted the presumption because there is not a significant likelihood that he will be removed in the reasonably foreseeable future.

*Zadvydas* contains some language to support the view that an alien need not wait until the expiration of the six-month period to seek release if he can establish that there is not a significant likelihood of his removal in the reasonably foreseeable future. For example, the Court stated that

---

[7] Although the *Zadvydas* opinion is not entirely clear on this point, it appears that the six-month period encompasses the ninety-day removal period. *See* 533 U.S. at 701 (basing six-month presumption on the belief that Congress doubted the constitutionality of detention for more than six months). The weight of authority supports this interpretation. *See, e.g., Khotesouvan v. Morones*, 386 F.3d 1298, 1300 (9th Cir. 2004); *Akinwale*, 287 F.3d at 1052 n. 3; *Bah v. Cangemi*, 489 F. Supp. 2d 905, 916 (D. Minn. 2007). *But see De La Teja v. United States*, 321 F.3d 1357, 1363 n.2 (11th Cir. 2003) (stating that *Zadvydas* established a presumption that detention is reasonable for six months after the removal period expires); *Diop v. Gonzales*, 2007 WL 2080173, at *3 n.2 (W.D. Okla. July 18, 2007) (stating that courts have disagreed about how to calculate the six-month period and that the Tenth Circuit has not addressed the issue).

"once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. But the Court also stated, "*After* this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701 (emphasis added). More importantly, the overall logic of the opinion indicates that an alien must ordinarily wait until the six-month period has expired before seeking release.

First, the Court was concerned in *Zadvydas* with indefinite detention. Throughout the opinion, the Court suggested that 8 U.S.C. § 1231(a)(6) would be constitutionally infirm if it were interpreted to allow indefinite detention. *See, e.g., id.* at 682 ("Based on our conclusion that indefinite detention . . . would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation . . . ."); *id.* at 690 ("There is no sufficiently strong special justification here for indefinite civil detention . . . ."); *id.* at 692 ("The serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty . . . is obvious."). The six-month presumptively reasonable period of detention is by its very nature not indefinite.

Second, the Court was concerned with court interference into an area that is primarily the domain of the executive branch. The Court established the six-month presumptively reasonable period to mitigate this concern. *Id.* at 700-01. The Court adopted six-months as the standard "for the sake of uniform administration." *Id.* at 701. Routinely allowing aliens to challenge their detention in court as soon as the ninety-day removal period expires would negate the purpose of the six-month presumption. It would increase the burdens on the relevant administrative agencies and invite second-guessing of executive decisions.

12

I conclude that a *Zadvydas* claim does not become ripe until the expiration of the six-month presumptively reasonable period for removal. Other courts have reached the same conclusion. *See, e.g., Akinwale*, 287 F.3d at 1052; *Ali v. Barlow*, 446 F. Supp. 2d 604, 609-10 (E.D. Va. 2006) (citing other cases).[8] Because Zeng's claim is not ripe, it should be dismissed without prejudice. *See Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004).

## CONCLUSION

For the reasons stated above, I recommend that:

1) the motion to compel (Doc. 9) be denied;

2) the motion to dismiss (Doc. 5) be granted; and

3) this proceeding be dismissed without prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

[8] Still other courts have indicated that, regardless of whether the six-month post-removal period has expired, an alien must be released if his pre-removal detention was inordinately long or if there is no possibility of removing him. *See Ly*, 351 F.3d at 266 n.1 (holding that Vietnamese petitioner was entitled to be released from pre-removal detention because there is no repatriation agreement between the United States and Vietnam and Vietnam does not accept deportees); *Oyedeji*, 332 F. Supp. 2d at 749 (releasing alien who had been detained over four years). Zeng asserted that there is no possibility of his removal because China has already affirmatively refused to accept his repatriation. Believing that his "alien file" contained documentation to support this assertion, Zeng filed a motion to compel the Government to provide him with the alien file. (Doc. 9.) I conducted an *in camera* review of the file. It contains no document stating that China has refused to accept Zeng's repatriation. Therefore, I need not decide whether an alien would have to wait until the six-month period expired even when there is no possibility of removal.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE